# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| SHAFIK AHMAD,<br>　　Petitioner, | Case No. 1:17-cv-359 |
| | Dlott, J. |
| vs. | Bowman, M.J. |
| UNITED STATES ATTORNEY,<br>GENERAL, et al.,<br>　　Respondents. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, who is currently incarcerated at the Butler County Jail in Hamilton, Ohio, pursuant to detention orders issued by United States Immigration and Customs Enforcement (ICE), has filed with the assistance of counsel a "Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241." (Doc. 1). On July 26, 2017, the respondents responded to the petition by filing an "Answer and Return in Opposition to Petition for Writ of Habeas Corpus and Motion to Dismiss or, Alternatively, Motion for Summary Judgment." (Doc. 11). Petitioner has filed a memorandum in reply to the respondents' submission. (Doc. 12). This matter is now ripe for disposition.

## I.　　Background

According to the petition, petitioner "was born in Uganda to a native Pakistani mother" and "is likely considered a citizen of Pakistan." (Doc. 1, at PageID 2). Petitioner entered the United States in 1989 and was a lawful permanent resident of the United States since 1992. (*See id.*, at PageID 2-3; *see also* Doc. 11-1, Ex. A, ¶ 4, at PageID 37). Petitioner earned a medical degree at Case Western University and became an "LPR [Lawful Permanent Resident] in the mid-1990s." (Doc. 1, ¶ 13, at PageID 4).

On March 23, 2011, petitioner was convicted in the Montgomery County, Ohio, Court of Common Pleas of conspiracy to commit murder. (*See* Doc. 11-1, Ex. A, ¶ 5, at PageID 37-38, &

Ex.1, at PageID 41-45; *see also* Doc. 1, ¶ 14, at PageID 4). A Notice to Appear was issued on April 6, 2011, for a hearing on the charge that petitioner was subject to removal from the United States under 8 U.S.C. §§ 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable") and 1101(a)(43)(A), (U) (defining "aggravated murder" to include, *inter alia*, murder and "an attempt or conspiracy to commit" murder). (*See* Doc. 11-1, Ex. A, ¶ 6, at PageID 38, & Ex. 2, at PageID 38). An immigration judge denied petitioner's request for protection under the Convention Against Torture and, on June 23, 2015, ordered him removed to Pakistan. (*See id.*, Ex. A, ¶ 7, at PageID 38, & Ex. 3, at PageID 48). The Board of Immigration Appeals dismissed petitioner's appeal on October 29, 2015. (*See id.*, Ex. A, ¶ 8, at PageID 38, & Ex. 4).

On October 13, 2016, petitioner was transferred into ICE custody and is currently detained by ICE at the Butler County, Ohio, Jail. (*See id.*, Ex. A, ¶ 8, at PageID 38; *see also* Doc. 1, ¶ 15, at PageID 4). On November 23, 2016, a travel document request was submitted to the Pakistani Consulate. (*See* Doc. 11-1, Ex. A, ¶ 10, at Page ID 38). On December 30, 2016, ICE served petitioner with a decision to continue his detention on the grounds that he "ha[d] been ordered removed from the United States by the immigration judge in Cleveland, OH" and that "ICE is actively pursuing a travel document for [his] removal from the United States." (*Id.*, Ex. A, ¶ 12, at PageID 39, & Ex. 5, at PageID 52). On April 21, 2017, ICE's Headquarters Removal and International Operations Unit (HQ RIO) reviewed petitioner's custody status and issued a second decision to continue petitioner's detention. (*See id.*, Ex. A, ¶ 13, at PageID 39, & Ex. 6, at PageID 53). The decision provided in pertinent part: "ICE is currently working with the government of Pakistan to secure a travel document for your removal from the United States. A travel document from the Government of Pakistan is expected, therefore you are to remain in ICE custody at this time." (*Id.*). On July 14, 2017, the HQ RIO reviewed petitioner's custody

2

status and issued a third decision to continue petitioner's detention. (*See id.*, Ex. A, ¶ 14, at PageID 39, & Ex. 7, at PageID 54). The decision reiterated that: "ICE is currently working with the government of Pakistan to secure a travel document for your removal from the United States. A travel document from the Government of Pakistan is expected; therefore you are to remain in ICE custody at this time." (*Id.*).

Luke Affholter, an ICE Deportation Officer, has averred in a declaration attached to the respondent's return of writ that "ICE has been working with Pakistani officials on the issuance of [petitioner's] travel document." (Doc. 11-1, Ex. A, ¶ 11). Affholter indicates that petitioner "has a prior passport that was issued by Pakistan, but ICE has been informed that as it was issued prior to the use of their current electronic system, the reissuance of a travel document requires additional investigation and verification." (*See id.*). Affholter further indicates that during a June 22, 2017 communication with the Pakistani consulate, ICE "w[as] informed that ICE's request for a travel document remains outstanding and continued efforts to obtain the travel document are ongoing." (*Id.*, Ex. A, ¶ 15, at PageID 39). Affholter states that "[b]ased on [his] experience, there are no categorical impediments to removing aliens to Pakistan." (*Id.*, Ex. A, ¶ 16, at PageID 39-40). Further, "[a]s [petitioner] has been issued a passport from Pakistan before, and as his current travel document request remains pending," Affholter states that he "believe[s] that it is significantly likely that [petitioner] can and will be removed from the United States in the reasonably foreseeable future." (*Id.*).

**II.     Habeas Petition**

Petitioner commenced the instant action on May 25, 2017. (Doc. 1). Petitioner asserts that his continued detention violates 8 U.S.C. § 1231(a)(6) (Ground One) and his substantive and procedural due process rights (Grounds Two and Three, respectively). (*See* Doc.1, at PageID 6-

3

8). As relief, petitioner seeks expedited consideration of this action, his immediate release from custody, injunctive relief, and attorney's fees and costs. (*See id.*, at PageID 8).

**III. Opinion**

Although there are statutory restrictions of court review regarding many immigration matters, a petition for writ of habeas corpus under 28 U.S.C. § 2241 "is appropriate for raising statutory and constitutional challenges to post-removal detention by ICE." *Estenor v. Holder*, No. 1:11cv743, 2011 WL 5572596, at *2 (W.D. Mich. Oct. 24, 2011) (Report & Recommendation) (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003)), *adopted*, 2011 WL 5589279 (W.D. Mich. Nov. 16, 2011). Congress has prescribed that once an alien has been ordered to be removed from the United States, "the Attorney General shall detain the alien" and "remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A) & (a)(2). Title 8 U.S.C. § 1231(a)(6) further provides in relevant part:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [90-day] removal period.

By its terms, § 1231(a)(6) "applies to three categories of aliens: (1) those ordered removed who are inadmissible under § 1182, (2) those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary [of the Department of Homeland Security (DHS)] determines to be either a risk to the community or a flight risk." *Clark v Martinez*, 543 U.S. 371, 377 (2005). In *Zadvydas*, the Supreme Court interpreted the provision "to authorize the Attorney General (now the Secretary [of DHS]) to detain aliens in the second category only as long as 'reasonably necessary' to

4

remove them from the country." *Clark*, 543 U.S. at 377 (quoting *Zadvydas*, 533 U.S. at 689, 699). The *Zadvydas* Court held that reading § 1231(a)(6) to authorize indefinite detention would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 690. Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id*. at 682.

In *Zadvydas*, the Supreme Court considered the six-month detention of an alien who is subject to removal due to criminal convictions to be presumptively reasonable. The Court then provided the following guidance in addressing detentions that exceed the six-month presumptively reasonable limit:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*. at 701.

Petitioner does not dispute that he is subject to a final order of removal based on his criminal conviction. Instead, in Ground One of the petition, petitioner contends that his continued detention beyond the six-month presumptively reasonable time period violates § 1231(a)(6). "There is no bright-line test for measuring the 'reasonable time' limitation engrafted onto § 1231(a)(6)." *Mulla v. Adducci*, 178 F. Supp.3d 573, 576 (E.D. Mich. Apr. 12, 2016) (quoting *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003)). "In the absence of a set period

5

of time, courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." *Ly*, 351 F.3d at 271.

Here, petitioner has not provided good reason to believe that his removal is unlikely in the reasonably foreseeable future. Although he expresses uncertainty in his petition as to whether he may meet the requirements for securing a Pakistani passport (*see* Doc. 1, ¶ 16, at PageID 4-5), the April 21, 2017, and July 14, 2017 Decisions to Continue Detention each state that "[a] travel document from the Government of Pakistan is expected." (Doc. 11-1, Exs. 6 & 7, at PageID 53-54). Further, Affholter states in his declaration that ICE was informed by the Pakistani consulate on June 22, 2017, that "continued efforts to obtain the [petitioner's] travel document are ongoing." (*Id.*, Ex. A, ¶ 15, at PageID 39). Moreover, it is undisputed that petitioner has previously been issued a Pakistani passport. (*See* Doc. 1, at PageID 2; Doc. 11-1, Ex. A, ¶ 16, at PageID 39).

Courts have uniformly held that "mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Estenor*, 2011 WL 5572596, at *3 (citing *Joseph v. Holder*, No. 11-11118, 2011 WL 2893070, at *3 (E.D. Mich. July 20, 2011); *Resil v. Hendricks*, Civ. Act. No. 11-2051, 2011 WL 2489930, at *6 (D.N.J. June 21, 2011)); *see also Newell v. Holder*, 983 F. Supp.2d 241, 248 (W.D.N.Y. 2013) (and numerous cases cited therein); *Nasr v. Larocca,* No. CV 16-1673, 2016 WL 3710200, at *3-4 (C.D. Cal. June 1, 2016) (Report & Recommendation) (and numerous cases cited therein) ("mere delay in the issuance of a travel document is insufficient to show that there is 'no significant likelihood of removal in the reasonably foreseeable future,' particularly where, as here, efforts to obtain the

travel documents are ongoing"), *adopted*, 2016 WL 3704675 (C.D. Cal. July 11, 2016);[1] *Chen v. Banieke*, Civ. No. 15-2188, 2015 WL 4919889, at *4-5 (D. Minn. Aug. 11, 2015); *Shahzad v. Gurule*, No. CV-13-01176, 2013 WL 6710114, at *2 (D. Ariz. Dec. 19, 2013) (explaining that the petitioner did not show good reason to believe that his removal is unlikely where "Pakistan [had] not rejected Petitioner's removal, and Pakistan authorities continue[d] to say that they [were] working to obtain proper documentation to facilitate Petitioner's removal"); *Head v. Keisler*, No. CIV-07-402-F, 2007 WL 4208709, at *5-6 (W.D. Okla. Nov. 26, 2007) (and numerous cases cited therein). The cases cited by petitioner in his reply involve situations where there was evidence of a lack of response from the foreign government or long detention periods and are therefore distinguishable.[2]

Even assuming for the sake of argument that petitioner's expressed uncertainty as to his eligibility for a Pakistani passport were sufficient to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, the respondent's evidence of on-going efforts to obtain petitioner's travel documents is

---

[1] In *Nasr*, the court cited in a "but see" reference one decision by the Ninth Circuit, wherein the court held that a detention of five years was "plainly unreasonable under any measure." *See Nasr*, *supra*, 2016 WL 3710200, at *4 (citing *Nadarajah v. Gonzales*, 443 F.3d 1069, 1080 (9th Cir. 2006)). In this case, petitioner's detention by ICE since October 13, 2016, does not implicate any such concerns.

[2] Petitioner relies on the following cases in support of his argument that his detention violates the six-month presumption. As set forth above, the facts of the cases he relies on are distinguishable. *Lewis v. INA*, No. 00CV0758(SJ), 2002 WL 1150158, at *4-5 (E.D.N.Y. May 7, 2002) ("good showing" requirement satisfied where "there [was] no evidence that the Consulate responded to any of [the Immigration and Naturalization Services' (INS)] letters" and a panel of INS interviewers had concluded "that travel documents were unlikely to be issued in the foreseeable future and recommended the release of Petitioner pending deportation."); *Kacanic v. Elwood*, No. CIV.A. 02-8019, 2002 WL 31520362, at *3-5 (E.D. Pa. Nov. 8, 2002) (granting writ where there was little contact with consular officials during first nine months of the petitioner's detention and the government's "own actions [showed] that it believe[d] that it [was] unlikely the Petitioner w[ould] be removed in the near future"); *Mohamed v. Ashcroft*, No. C01-1747P, 2002 WL 32620339, at *1 (W.D. Wash. Apr. 15, 2002) (granting writ where the foreign embassy failed to respond and the government "offered no specific information regarding how or when they expect[ed] to obtain the necessary documentation or cooperation"); *Seretse v. Ashcroft*, 215 F. Supp.2d 37, 50 (D.C. Cir. 2002) (granting the petitioner's motion for preliminary injunction where he had been detained "almost four years after his transfer to INS custody"); *Okwilagwe v. INS*, 3-01-CV-1416-BD, 2002 WL 356758, at *2 (D.N.J Apr. 14, 2010) (granting writ where, after the petitioner had been detained for eleven months, lack of communications from consular officials provided "no way to determine" whether the removal would occur in the reasonably foreseeable future).

sufficient to rebut that showing. *See, e.g.*, *Head*, 2007 WL 4208709, at *4-5 (finding that "even if Petitioner's assertion were sufficient to meet his initial burden under *Zadvydas*," the respondents rebutted that showing with evidence that the issuance of "a travel document in the reasonabl[y] foreseeable future [was] not foreclosed").

Nor has petitioner demonstrated that he is entitled to habeas relief based on his claim in Ground Two that his Fifth Amendment right to substantive due process has been violated because he has remained in detention beyond the presumptively reasonable six-month period recognized by the Supreme Court in *Zadvydas*. *See, e.g.*, *Nasr*, 2016 WL 3710200, at *5 ("[T]he *Zadvyas* due process analysis applies only if a danger of indefinite detention exists and there is no significant likelihood of removal in the reasonably foreseeable future.") (quoting *Khotesouvan v. Morones*, 386 F.3d 1298, 1300 (9th Cir. 2004) (alteration in original)). For the reasons stated above, the record before this Court does not contain facts suggesting that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701.

Finally, petitioner has not demonstrated that he is entitled to habeas relief based on the claim alleged in Ground Three that he has not been provided a "neutral decision-maker" to review his continued custody in violation of his right to procedural due process. *Cf. Atugah v. Dedvukaj*, No. 2:16cv68, 2016 WL 3189976, at *4 (W.D. Mich. May 10, 2016) (Report & Recommendation) (rejecting a similar claim as meritless), *adopted*, 2016 WL 3166600 (W.D. Mich. June 7, 2016), *aff'd*, No. 16-1862, 2017 WL 2698255 (6th Cir. June 22, 2016); *Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) (holding that in the absence of "some indication . . . that ICE failed to comply with any specific requirements" of

custody-review procedures established in the Code of Federal Regulations, petitioner had not demonstrated a violation of his Fifth Amendment right to procedural due process).

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated that he is entitled to habeas corpus relief because he has not shown that he is currently in ICE custody in violation of the Constitution or laws of the United States. Although petitioner has not shown an entitlement to relief at this time, if his detention continues for an extended period, he may be able to make the requisite showing under *Zadvydas* at a later time. *Cf. Nasr*, *supra*, 2016 WL 3710200, at *6 (and cases cited therein); *Estenor*, *supra*, 2011 WL 5572596, at *4. Therefore, the instant petition should be dismissed without prejudice to petitioner's ability to apply for future relief if circumstances change. *See id*.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The respondents' motion to dismiss (DOC. 11) be **GRANTED** and that the petitioner's petition for writ of habeas corpus (Doc. 1) be **DISMISSED** without prejudice to petitioner's ability to apply for future relief if circumstances change.

2. A certificate of appealability should not issue because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should

DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

> *s/Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SHAFIK AHMAD,                                Case No. 1:17-cv-359
    Petitioner,

                                                 Dlott, J.
vs.                                                 Bowman, M.J.

UNITED STATES ATTORNEY,
GENERAL, et al.,
    Respondents.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).